## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ULUOCHA AMAECHI,** | : | **Civil No. 1:21-CV-1177** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DISTRICT COUNCIL 89, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.   Introduction

Uluocha Amaechi, the *pro se* plaintiff and a former employee of the Commonwealth of Pennsylvania, filed this action against several individual Commonwealth employees and District Council 89, American Federation of State, County, Municipal Employees ("AFSCME"). Amaechi's pleadings have gone through several iterations but the current operative pleading is the plaintiff's second amended complaint. Aw we read it, in this second amended complaint Amaechi alleges violations of his First and Fourteenth Amendment rights against AFSCME pursuant to 42 U.S.C. § 1983 arising from his termination in January of 2021.

AFSCME has filed a motion to dismiss the Second Amended Complaint, arguing that the plaintiff has failed to plead sufficient facts to support his allegations

that AFSCME violated his constitutional rights. (Doc. 37). After consideration, we agree, and we will grant the defendant's motion to dismiss.

## II.  <u>Background</u>

The factual background of this Memorandum Opinion is taken from the well-pleaded facts alleged in plaintiff's Second Amended Complaint (Doc. 35), which we must accept as true for purposes of the instant motion to dismiss. Uluocha Amaechi began employment with the Commonwealth in 2018 as an Economic Development Analyst. (Doc. 35, ¶ 39). The Second Amended Complaint alleges that in 2019, Amaechi was placed on a Corrective Action Plan ("CAP") for his less than satisfactory job performance, during which he was subjected to periodic employee performance reviews. (<u>Id.</u>, ¶¶ 42-43). Then, on December 2, 2020, a pre-disciplinary conference ("PDC") was held to address Amaechi's performance issues. (<u>Id.</u>, ¶ 12). At this PDC, Amaechi was suspended without pay pending an investigation into his alleged unsatisfactory job performance. (<u>Id.</u>) Amaechi voiced his intention at the PDC to file a grievance pursuant to the Collective Bargaining Agreement ("CBA"). (<u>Id.</u>, ¶¶ 12-13). Amaechi's suspension without pay was memorialized in a letter he received on December 7, 2020. (<u>Id.</u>, ¶ 15).

The complaint alleges that Amaechi submitted a three-page grievance with fourteen attachments via email to his supervisor, Melissa Williams, on December 4, 2020. (<u>Id.</u>, ¶ 13). On this email, he copied Donna Enrico, Williams' supervisor, and

Booker Bates, an AFSCME representative. (<u>Id.</u>) On January 5, 2021, Amaechi received emails from Bates and another AFSCME representative, Andrew Kozlosky. Kozlosky's email inquired whether Amaechi was willing to accept a settlement offer from the Commonwealth, which entailed Amaechi resigning and having his record wiped clean to enable him to apply for other Commonwealth jobs. (<u>Id.</u>, ¶ 16). Bates' email informed Amaechi that submitting his grievance via email to his supervisor was not considered a formal grievance. (<u>Id.</u>) Kozlosky also informed Amaechi that if he did not accept the Commonwealth's offer, he would need to proceed with the grievance process. (<u>Id.</u>, ¶ 20). Kozlosky also confirmed that AFSCME had received notice of the plaintiff's termination on January 5, 2021. (<u>Id.</u>, ¶ 21).

According to Amaechi, AFSCME never informed him that the way he submitted his grievance was improper, but instead instructed him to file two subsequent grievant witness statements, which he filed on January 22, 2021 and February 26, 2021. (<u>Id.</u>, ¶ 22). In addition, on January 13, 2021, Bates gave Amaechi an "AGP Witness Statement" sheet, a "grievance fact sheet," and a "grievance form" to fill out. (<u>Id.</u>, ¶ 23). Amaechi filled out these forms and a six-page grievance statement and submitted them on January 22, 2021. (<u>Id.</u>) Kozlosky then informed Amaechi that he would be moving forward with a first step meeting regarding the plaintiff's grievance, and he asked for additional information from Amaechi prior to

the meeting. (Id., ¶¶ 24-25). This meeting was ultimately postponed and Kozlosky was waiting to reschedule the meeting until Anthony Reda, a Human Resource Analyst with the Commonwealth, returned from leave. (Id., ¶ 27). In the interim, Amaechi submitted more statements and documents to Kozlosky and indicated that he would be open to a good faith settlement with the Commonwealth, but Kozlosky informed Amaechi that he did not think there would be a better "good faith" offer than the initial settlement the Commonwealth had offered. (Id., ¶ 30). The complaint accuses Kozlosky of not even attempting to ask Amaechi what he believed would be a reasonable, good faith settlement. (Id.)

The first step meeting ultimately took place on May 20, 2021. (Id., ¶ 31). Amaechi contends that at this hearing, AFSCME and the Commonwealth failed to explain why they did not produce documents that the plaintiff had requested. (Id., ¶ 31). Amaechi further alleges that AFSCME mishandled his grievance, in that it intentionally misguided Amaechi during the process and acted in concert with the Commonwealth employees by failing to present documents and misrepresenting the facts of Amaechi's case. (Id., ¶ 32). Thereafter, on June 4, 2021, Amaechi received a letter informing him that AFSCME determined his grievance was without merit. (Id., ¶ 34). According to Amaechi, AFSCME characterized his grievance as "mere gripes," a "list of demands," and "opinions and disagreements." (Id., ¶ 37). The grievance was withdrawn without prejudice on June 15, 2021. (Id., ¶ 35).

It is against this factual backdrop that Amaechi filed the instant action on July 2, 2021. (Doc. 1). The initial complaint named the Commonwealth and AFSCME as defendants. (Id.) Thereafter, the defendants filed a motion to dismiss, and Amaechi filed a motion to amend his complaint. We granted the plaintiff's motion to amend, and the amended complaint was filed, omitting the Commonwealth as a defendant but adding two of the individual defendants—Melissa Williams and Donna Enrico. (Doc. 18). AFSCME moved to dismiss the amended complaint, and Amaechi again moved to amend his complaint. We granted the plaintiff's motion, and the second amended complaint, which added Anthony Reda as a defendant, is now the operative pleading in this case. (Doc. 35). The complaint brings claims under § 1983, alleging that the individual defendants and AFSCME violated Amaechi's First and Fourteenth Amendment rights.

AFSCME has now moved to dismiss the claims against it. (Doc. 37). On this score, the amended complaint asserts that AFSCME violated Amaechi's First and Fourteenth Amendment rights when it allegedly interfered with the grievance process and failed to adequately represent him. He further asserts inn a summary fashion that AFSCME acted in concert with Commonwealth employees to deprive him of his constitutional rights. For its part, AFSCME contends it is not a state actor and, thus, cannot be held liable under § 1983. Moreover, it asserts that the plaintiff has failed to state constitutional claims against it. The motion is fully briefed and is

ripe for resolution. (Docs. 38, 43, 44). For the reasons that follow, we will grant AFSCME's motion to dismiss.

## III.   <u>Discussion</u>

### A. <u>Motion to Dismiss – Standard of Review</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u>, at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>, at 678. Rather,

7

in conducting a review of the adequacy of a complaint, the Supreme Court has

advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain

more than mere legal labels and conclusions; it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for
> overcoming a motion to dismiss and refined this approach in Iqbal. The
> plausibility standard requires the complaint to allege "enough facts to

state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting

Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint,

attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007). The court may also consider "undisputedly authentic

document[s] that a defendant attached as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] documents." Pension Benefit Guar.

Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

B. **The Defendant's Motion Will Be Granted.**

As we have explained, Amaechi brings constitutional claims against AFSCME, alleging violations of his First and Fourteenth Amendment rights. Amaechi asserts these claims pursuant to § 1983, which does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate and pre-existing legal rights otherwise guaranteed under the Constitution and laws of the United States. Albright v. Oliver, 510 U.S. 266, 271

10

(1994); <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: (1) *whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981).

<u>Boykin v. Bloomsburg Univ.</u>, 893 F. Supp. 409, 416 (M.D. Pa. 1995), <u>aff'd</u>, 91 F.3d 122 (3d Cir. 1996) (emphasis added).

Thus, it is essential to any civil rights claim brought under § 1983 that the plaintiff allege and prove that the defendants were acting under color of law when that defendant allegedly violated the plaintiff's rights. To the extent that a complaint seeks to hold private parties liable for alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since the statute typically requires a showing that the defendants are state actors. <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999).

On this score, it is well settled that labor unions such as AFSCME are typically not considered state actors for purposes of § 1983. <u>See</u> <u>Johnson v. Int'l Broth. of Teamsters (Local 830)</u>, 256 F. App'x 481, 483 (3d Cir. 2007) ("[L]abor unions are

11

generally not state actors—they are private entities"); Figueroa v. City of Camden, 580 F. Supp. 2d 390, 401 (D.N.J. 2008); Beu v. City of Vineland, 2020 WL 7418007, at *5 (D.N.J. Dec. 18, 2020); see also Jackson v. Temple University of Com. System of Higher Education, 721 F.2d 931, 933 (3d Cir. 1983) (affirming the district court's decision to grant summary judgment in favor of the Union defendant because "the plaintiff failed to satisfy the threshold requirement . . . of 'state action'"). There is an exception to this general rule, in that a union may be considered a state actor if it is alleged to have conspired with the state to violate the employee's constitutional rights. Johnson, 256 F. App'x 481; Figueroa, 580 F.Supp.2d at 401. However, in order to sustain such a claim under § 1983, a plaintiff must set forth specific factual allegations of an agreement or understanding among the defendants to deprive him of his constitutional rights. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 295 (3d Cir. 2018) ("[T]he plaintiff must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action") (quotations omitted). Such allegations showing the circumstances of the alleged conspiracy can include "the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose." Fioriglio v. City of Atlantic City, 996 F.Supp. 379, 386 (D.N.J. 1998).

In the instant case, Amaechi has failed to set forth specific factual averments to sustain a § 1983 claim against AFSCME. Rather, the complaint simply alleges in

a cursory manner that AFSCME "acted in concert" with the Commonwealth employees during the grievance process. (Doc. 35, ¶¶ 32, 77-78). There are no well-pleaded factual allegations tending to show that any representative of AFSCME and the individual employees came to any sort of agreement to violate the plaintiff's rights. These conclusory allegations are legally insufficient to state a civil rights conspiracy claim and are, therefore, fatal to Amaechi's claims against AFSCME. Thus, these claims will be dismissed. Moreover, as we will discuss below, even if Amaechi was able to demonstrate that AFSCME is a state actor for purposes of § 1983, we find that his constitutional claims still fail on their merits, as he has failed to sufficiently allege that AFSCME violated his First or Fourteenth Amendment rights.

With respect to his Fourteenth Amendment due process claim, Amaechi contends that AFSCME failed to adequately represent him in the CBA grievance process and affirmatively misled him during the process, thereby depriving him of due process and ultimately leading to his termination. To be sure, the Fourteenth Amendment prohibits states from depriving a person of life, liberty, or property without due process of law. See U.S. Const. amend. XIV. The Third Circuit has held that an individual has a property interest in public employment "when state law confers such an interest by statute or contract." Heneghan v. Northampton Community College, 493 F. App'x 257, 259 (3d Cir. 2012) (citing Unger v. Nat'l

Residents Matching Program, 928 F.2d 1392, 1398 (3d Cir. 1991)). When this is the case, a public employee is entitled to pre-termination and post-termination administrative procedures. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547–48 (1985).

However, on this score, it is well-settled that "[w]here a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, we have held that those procedures satisfy due process requirements 'even if the hearing conducted by the Employer ... [was] inherently biased.'" Dykes v. Southeastern Pennsylvania Transp. Auth., 68 F.3d 1564, 1571 (3d Cir. 1995) (quoting Jackson v. Temple University, 721 F.2d 931 (3d Cir. 1983)). Additionally, the Third Circuit has explained that "no precedent, 'binding or otherwise,' has 'recognized a section 1983 action where a union has refused to take to arbitration an employee's claim against a public employer.'" Id. (quoting Jackson, 721 F.2d at 933 n.1). Rather, the alleged failure of a union to seek arbitration is a matter that can be brought to the state courts, as state law authorizes Courts of Common Pleas to order completion of a CBA's arbitration procedure. Heneghan, 493 F. App'x at 260 (citing Dykes, 68 F.3d at 1751) (holding that a unions failure to seek arbitration does not "render the process unavailable or inadequate"). Thus, the Court of Appeals has found that "the availability of this safeguard under Pennsylvania law satisfies due

process even if the original hearing conducted by the employer was biased and the union refused to take the employee's claim to arbitration." Id.

In the instant case, Amaechi contends that AFSCME misled him during the grievance process and found his grievance to be without merit, and subsequently refused to submit his grievance to arbitration. However, as we have explained, these administrative processes made available to Amaechi under the CBA, processes of which he availed himself, are sufficient to satisfy the due process requirements of the Fourteenth Amendment. Additionally, caselaw makes it clear that a union's failure to adequately represent an employee in the grievance process is not a deprivation of a constitutional right. See e.g., Parson v. Carlisle Borough, 2014 WL 1095895, at *2 (M.D. Pa. March 19, 2014) (Caldwell, J.) (allegation of failure to provide adequate union representation was not sufficient to show a constitutional deprivation). Instead, "where an adequate grievance/arbitration procedure is in place and is followed, a plaintiff has received the due process to which he is entitled." Dykes, 68 F.3d at 1565. Here, Amaechi took part in the grievance process and had union representation throughout. The amended complaint details steps taken by AFSCME representatives to guide Amaechi through the process. His grievance was ultimately withdrawn and found to be without merit, and AFSCME decided not to submit the grievance to arbitration. As we have noted, Pennsylvania state law also provides an additional safeguard to employees like Amaechi who are dissatisfied

with their union's failure to submit a grievance to arbitration. This constitutes the process that was due to the plaintiff in this setting. Accordingly, given that Amaechi was afforded all the process he was due, we cannot conclude his due process rights were violated by AFSCME.

Nor can we find that AFSCME violated Amaechi's First Amendment rights. On this score, Amaechi contends that AFSCME interfered with his First Amendment right to grieve his termination when it misrepresented the facts of his case and misled him during the grievance process. At the outset, we note that Amaechi's grievance regarding his termination may not even fall within First Amendment's protections. See Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 397 (2011) ("If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases"); Thomas v. Delaware State Univ., 626 F. App'x 384, 388 (3d Cir. 2015) (union-related grievance did not involve matter of public concern, and thus, was not protected speech under the First Amendment); Emigh v. Steffee, 442 F. App'x 660, 666 (3d Cir. 2011) (same).

However, even if we concluded that Amaechi's union grievance regarding his termination somehow constituted protected activity under the First Amendment, Amaechi has not shown how that activity was interfered with in a way that violated his First Amendment rights. On the contrary, the allegations in the amended

16

complaint indicate that Amaechi pursued a grievance regarding his termination and was afforded a hearing. Representatives from AFSCME provided Amaechi with documentation for him to submit a grievance and scheduled a hearing. While the result of this hearing was not the outcome Amaechi was hoping for, there are no facts in the amended complaint from which we could infer that AFSCME interfered with the grievance process and, in turn, interfered with any First Amendment protections associated with the grievance process. Accordingly, we conclude that Amaechi has filed to state a § 1983 claim against AFSCME for a violation of his First Amendment rights.

We are further constrained to note that AFSCME's alleged conduct would not amount to a violation under the Labor Management Relations Act, 29 U.S.C. § 185, (LMRA) because "[t]he mere refusal of a union to take a complaint to arbitration does not establish a breach of duty, even if the member's claim was meritorious." Keister v. PPL Corp., 253 F.Supp.3d 760, 778 (M.D. Pa. 2016) (quoting Findley v. Jones Motor Freight, Div. Allegheny Corp., 639 F.2d 953, 958 (3d Cir. 1981)). This settled legal principle has a dual significance in the instant case. First, it further undermines any Constitutional First Amendment claim premised upon what the plaintiff perceives as the union's lack of vigor in supporting his grievance. Simply put, in our view, it is difficult to conclude that conduct which does not violate this statutory law would nevertheless constitute a violation of the Constitution.

Moreover, to the extent that Amaechi's second amended complaint contains some sort of lurking LMRA fair representation claim, that claim would also fail as a matter of law.

Finally, to the extent Amaechi is attempting to bring a state law claim alleging that AFSCME breached some duty of fair representation, we note that the proposed disposition of the plaintiff's federal legal claims, in turn, suggests the appropriate course for the court to follow in addressing any ancillary state law claims that the plaintiff may wish to pursue against this defendant. In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found to be subject to dismissal, the proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White, No. 05-2150, 2007 WL 3033865, *13 (M.D. Pa. Oct. 15, 2007) (Caputo, J.) (adopting report and recommendation dismissing ancillary malpractice claim against dentist); see Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008) (citing United Mine Workers, 383 U.S. at 726 and Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d

Cir. 1976).) ("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains"). As the Supreme Court has aptly observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers, 383 U.S. at 726 (footnotes omitted).

Here, we have found that Amaechi's federal claims against AFSCME are subject to dismissal at the outset of this litigation. Therefore, in the exercise of our discretion in this district, we should decline to assert supplemental jurisdiction over potential ancillary state law claims in this case where all potential federal claims brought before us failed as a matter of law. Accordingly, this pendent state law claim will be dismissed without prejudice.

## IV.   **Conclusion**

Accordingly, for the foregoing reasons, AFSCME's motion to dismiss (Doc. 37) will be GRANTED, and the second amended complaint will be dismissed as to AFSCME.

An appropriate order follows.

Dated: June 7, 2022

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge