IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ULUOCHA AMAECHI, | : | Civil No. 1:21-CV-1177 |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| DISTRICT COUNCIL 89, et al., | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.   Introduction

Uluocha Amaechi, the *pro se* plaintiff and a former employee of the Commonwealth of Pennsylvania, filed this action against several individual Commonwealth employees—Melissa Williams, Donna Enrico, and Anthony Reda—and District Council 89, American Federation of State, County, Municipal Employees ("AFSCME"). Amaechi's pleadings have gone through several iterations but the current operative pleading is the plaintiff's second amended complaint. As we read it, in this second amended complaint Amaechi alleges violations of his First and Fourteenth Amendment rights against the individual defendants pursuant to 42 U.S.C. § 1983 arising from his termination in January of 2021.

These individual defendants have now filed a motion to dismiss the Second Amended Complaint, arguing that the plaintiff has failed to plead sufficient facts to support his allegations that they violated his constitutional rights. (Doc. 41). After consideration, we agree, and we will grant the defendants' motion to dismiss.

## II.   Background

The factual background of this Memorandum Opinion is taken from the well-pleaded facts alleged in plaintiff's Second Amended Complaint (Doc. 35), which we must accept as true for purposes of the instant motion to dismiss. Uluocha Amaechi began employment with the Commonwealth in 2018 as an Economic Development Analyst. (Doc. 35, ¶ 39). The Second Amended Complaint alleges that in 2019, Amaechi was placed on a Corrective Action Plan ("CAP") for his less than satisfactory job performance, during which he was subjected to periodic employee performance reviews. (Id., ¶¶ 42-43). Then, on December 2, 2020, a predisciplinary conference ("PDC") was held to address Amaechi's performance issues. (Id., ¶ 12). At this PDC, Amaechi was suspended without pay pending an investigation into his alleged unsatisfactory job performance. (Id.) Amaechi voiced his intention at the PDC to file a grievance pursuant to the Collective Bargaining Agreement ("CBA"). (Id., ¶¶ 12-13). Amaechi's suspension without pay was memorialized in a letter he received on December 7, 2020. (Id., ¶ 15).

With respect to the individual defendants, the complaint alleges that Melissa Williams was Amaechi's direct supervisor, and Donna Enrico was Williams' supervisor. (Id., ¶ 40). As to Williams, Amaechi avers that Williams did not offer him one-on-one training when he began his employment with the Commonwealth. (Id., ¶ 41). In March of 2019, Amaechi was placed on a CAP due to his less than satisfactory job performance, and as his supervisor, Williams took part in reporting Amaechi's progress on his Employee Performance Reviews ("EPR"). (Id., ¶ 44). The complaint alleges a host of assertions that Williams wrote false information in these EPRs, including allegations that Amaechi was sleeping at his desk, and that he was having conversations with others during virtual staff meetings, allegations which Amaechi denies. (Id., ¶¶ 44, 51). Amaechi further alleges that Williams was reporting poor performance by the plaintiff in the EPRs, while simultaneously acknowledging via email or phone that Amaechi was improving. (Id., ¶ 52).

The complaint also alleges that Williams disparaged Amaechi and embarrassed him in front of his colleagues. (Id., ¶ 61). Amaechi contends that his personal information was left on his desk where others could see it; he was laughed at on a conference call with Williams and Enrico; he was made to take ownership of a mistake that was not his; and he was lectured by Williams in front of his colleagues rather than in private. (Id., ¶¶ 68-71). As to Enrico, Amaechi contends that she did not step in and intervene when Williams was disparaging him. (Id., ¶ 80). He further

3

asserts that Williams and Enrico frustrated his job performance and improvement by failing to timely respond to his questions, giving him burdensome instructions, and providing incorrect job guidance. (Id., ¶ 62).

Following his PDC hearing on December 2, 2020, where he was suspended without pay pending an investigation into his job performance, Amaechi submitted a three-page grievance with fourteen attachments via email to Williams, on December 4, 2020. (Id., ¶ 13). On this email, he copied Enrico and Booker Bates, an AFSCME representative. (Id.) After some back and forth between Amaechi and AFSCME representatives regarding the proper filing of a grievance and the documents needed to file a grievance, Amaechi submitted a formal grievance. (Id., ¶¶ 16-23). A first step meeting ultimately took place on May 20, 2021. (Id., ¶ 31). Amaechi contends that at this hearing, AFSCME and the Commonwealth failed to explain why they did not produce documents that the plaintiff had requested. (Id., ¶ 31). Amaechi further alleges that the Commonwealth employees acted in concert with AFSCME by failing to present documents and misrepresenting the facts of Amaechi's case. (Id., ¶ 32).

On June 4, 2021, Anthony Reda, a Human Resources Analyst, emailed AFSCME to inform the union of the Commonwealth's findings and to inform them that there was no violation of the CBA when Amaechi was suspended and ultimately terminated. (Doc. 33-3, at 16-18). Thereafter, on June 4, 2021, Amaechi received a

letter informing him that AFSCME determined his grievance was without merit. (Doc. 35, ¶ 34). According to Amaechi, AFSCME characterized his grievance as "mere gripes," a "list of demands," and "opinions and disagreements." (Id., ¶ 37). The grievance was withdrawn without prejudice on June 15, 2021. (Id., ¶ 35).

It is against this factual backdrop that Amaechi filed the instant action on July 2, 2021. (Doc. 1). The initial complaint named the Commonwealth and AFSCME as defendants. (Id.) Thereafter, the defendants filed a motion to dismiss, and Amaechi filed a motion to amend his complaint. We granted the plaintiff's motion to amend, and the amended complaint was filed, omitting the Commonwealth as a defendant but adding two of the individual defendants—Melissa Williams and Donna Enrico. (Doc. 18). AFSCME moved to dismiss the amended complaint, and Amaechi again moved to amend his complaint. We granted the plaintiff's motion, and the second amended complaint, which added Anthony Reda as a defendant, is now the operative pleading in this case. (Doc. 35). The complaint brings claims under § 1983, alleging that the individual defendants and AFSCME violated Amaechi's First and Fourteenth Amendment rights.

Williams, Enrico, and Reda have now moved to dismiss the claims against them. (Doc. 41). On this score, the amended complaint asserts that these defendants violated Amaechi's First and Fourteenth Amendment rights when they allegedly interfered with the grievance process and provided false information in his EPRs

which led to his termination. He further asserts in a summary fashion that the Commonwealth employees acted in concert with the union to deprive him of his constitutional rights. Finally, in one conclusory allegation, Amaechi contends that he was disciplined more severely than other coworkers because of his race. For their part, the defendants contend that Amaechi failed to properly serve them, and thus his complaint should be dismissed. Moreover, they assert that the plaintiff has failed to state constitutional claims against them. The motion is fully briefed and is ripe for resolution. (Docs. 42, 45, 47). For the reasons that follow, we will grant the defendants' motion to dismiss.

## III.   Discussion

### A. Motion to Dismiss – Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.

6

2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>, at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u>, at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u>, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The

District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting

Iqbal, 129 S. Ct. at 1950).

 In considering a motion to dismiss, the court generally relies on the complaint,

attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007). The court may also consider "undisputedly authentic

document[s] that a defendant attached as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] documents." Pension Benefit Guar.

Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover,

"documents whose contents are alleged in the complaint and whose authenticity no

party questions, but which are not physically attached to the pleading, may be

considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.

2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002)

(holding that "[a]lthough a district court may not consider matters extraneous to the

pleadings, a document integral to or explicitly relied upon in the complaint may be

considered without converting the motion to dismiss in one for summary

judgment"). However, the court may not rely on other parts of the record in

determining a motion to dismiss, or when determining whether a proposed amended

complaint is futile because it fails to state a claim upon which relief may be granted.

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## B. <u>The Defendants' Motion Will Be Granted.</u>[1]

As we have explained, Amaechi brings constitutional claims against Williams, Enrico, and Reda, alleging violations of his First and Fourteenth Amendment rights. Amaechi asserts these claims pursuant to § 1983, which does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate and pre-existing legal rights otherwise guaranteed under the Constitution and laws of the United States. <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994); <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

> In this regard, it is also well settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of a federally protected right. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981).

---

[1] The defendants contend that Amaechi's complaint should be dismissed because it was never properly served on the Commonwealth defendants. However, because we conclude that Amaechi's constitutional claims are without merit, we do not decide the question of whether Amaechi properly served these defendants.

Boykin v. Bloomsburg Univ., 893 F. Supp. 409, 416 (M.D. Pa. 1995), aff'd, 91 F.3d

122 (3d Cir. 1996). Thus, it is essential to any civil rights claim brought under §

1983 that the plaintiff allege and prove that the defendants were acting under color

of law when that defendant allegedly violated the plaintiff's rights. In the instant

case, the individual defendants are Commonwealth employees, and they are alleged

to have violated the plaintiff's constitutional rights with respect to their involvement

in the termination of his public employment. Accordingly, it is undisputed that these

defendants were acting under color of state law for purposes of the plaintiff's

constitutional claims. See Bonenberger v. Plymouth Twp., 132 F.3d 20, 24 (3d Cir.

1997) ("[T]he essence of section 1983's color of law requirement is that the alleged

offender, in committing the act complained of, abused a power or position granted

by the state").

       With respect to his First Amendment claim, Amaechi contends that these

individual defendants acted in concert with the union representatives to interfere

with the pre-termination and post-termination administrative processes. At the

outset, we note that Amaechi's grievance regarding his termination may not even

fall within First Amendment's protections since it appears that this grievance related

to essentially private disputes between Amaechi and his supervisors regarding his

job performance.  Thus, the grievance process in this case did not implicate matters

of public concern cloaked in First Amendment protections. See Borough of Duryea,

Pa. v. Guarnieri, 564 U.S. 379, 397 (2011) ("If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases"); Thomas v. Delaware State Univ., 626 F. App'x 384, 388 (3d Cir. 2015) (union-related grievance did not involve matter of public concern, and thus, was not protected speech under the First Amendment); Emigh v. Steffee, 442 F. App'x 660, 666 (3d Cir. 2011) (same).

However, even if we concluded that Amaechi's union grievance regarding his termination somehow constituted protected activity under the First Amendment, Amaechi has not shown how that activity was interfered with in a way that violated his First Amendment rights. Amaechi plainly disagrees with the outcome of this process but does not allege that his right to speak out was unconstitutionally stifled. Instead, the second amended complaint seems to simply complain about how others exercised their right to speak out during these proceedings. The amended complaint sets forth allegations that Williams provided allegedly false information in her EPRs, which ultimately led to a PDC and Amaechi's suspension and termination. However, Amaechi does not allege that any of the individual defendants interfered with the grievance process. Moreover, Defendant Reda appears to be the only individual defendant who was involved post-termination, in that he worked for Human Resources and issued a letter to the union confirming the investigation into Amaechi's work performance. In our view, the amended complaint fails to set forth

13

factual allegations from which we can infer that any of the individual defendants interfered with the grievance process. Accordingly, we find no First Amendment violation here.[2]

We similarly conclude that Amaechi has failed to state a Fourteenth Amendment claim against these defendants. First, to the extent that Amaechi raises an equal protection claim based on race, we note that there is only one single conclusory allegation, which avers that Amaechi was disciplined more harshly than other colleagues because of his race. (Doc. 35, ¶ 73). However, and significantly, there are no other allegations in the complaint which would give rise to a race-based equal protection claim, and this conclusory allegation, standing alone, is insufficient to support such a claim. See e.g., Danihel v. Office of President of U.S., 616 F. App'x 467, 470-71 (3d Cir. 2015) (conclusory allegations that other individuals were treated better than the plaintiff were insufficient to state an equal protection claim); Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005) (dismissing a plaintiff's equal protection claim under Rule 8 where the complaint failed to identify any occasions or circumstances in which the plaintiff was treated differently

---

[2] We note that the potential implications of Amaechi's First Amendment claim are sweeping in that it would convert every factual dispute between a worker and his supervisors and every adverse grievance resolution in a public employment context into a constitutional infraction. In the absence of compelling legal authority accepting this far reaching view of the First Amendment, we are reluctant to embrace this claim.

than other coworkers). Accordingly, we will dismiss any Fourteenth Amendment

equal protection claim against these defendants.

As for the plaintiff's due process claim, the Fourteenth Amendment prohibits

states from depriving a person of life, liberty, or property without due process of

law. See U.S. Const. amend. XIV. The Third Circuit has held that an individual has

a property interest in public employment "when state law confers such an interest by

statute or contract." Heneghan v. Northampton Community College, 493 F. App'x

257, 259 (3d Cir. 2012) (citing Unger v. Nat'l Residents Matching Program, 928

F.2d 1392, 1398 (3d Cir. 1991)). When this is the case, a public employee is entitled

to pre-termination and post-termination administrative procedures. See Cleveland

Bd. of Educ. v. Loudermill, 470 U.S. 532, 547–48 (1985).

However, on this score, it is well settled that "[w]here a due process claim is

raised against a public employer, and grievance and arbitration procedures are in

place, we have held that those procedures satisfy due process requirements 'even if

the hearing conducted by the Employer ... [was] inherently biased.'" Dykes v.

Southeastern Pennsylvania Transp. Auth., 68 F.3d 1564, 1571 (3d Cir. 1995)

(quoting Jackson v. Temple University, 721 F.2d 931 (3d Cir. 1983)). Further, the

alleged failure of a union to seek arbitration is a matter that can be brought to the

state courts, as state law authorizes Courts of Common Pleas to order completion of

a CBA's arbitration procedure. Heneghan, 493 F. App'x at 260 (citing Dykes, 68

F.3d at 1751) (holding that a unions failure to seek arbitration does not "render the process unavailable or inadequate"). Thus, the Court of Appeals has found that "the availability of this safeguard under Pennsylvania law satisfies due process even if the original hearing conducted by the employer was biased and the union refused to take the employee's claim to arbitration." Id.

In the instant case, Amaechi contends that the Commonwealth employees provided false reports on his EPRs, which led to a PDC and his ultimate suspension and termination. He then avers in a conclusory fashion that the Commonwealth defendants acted in concert with his union to deprive him of due process during the PDC and subsequent grievance process. However, as we have explained, these administrative processes made available to Amaechi under the CBA, processes of which he availed himself, are sufficient to satisfy the due process requirements of the Fourteenth Amendment, even if the employer's administrative process was inherently biased. Indeed, "where an adequate grievance/arbitration procedure is in place and is followed, a plaintiff has received the due process to which he is entitled." Dykes, 68 F.3d at 1565. Here, Amaechi took part in the disciplinary process and subsequent grievance process and had union representation throughout. His grievance was ultimately withdrawn and found to be without merit, and the union decided not to submit the grievance to arbitration. As we have noted, Pennsylvania state law also provides an additional safeguard to employees like Amaechi who are

16

dissatisfied with their union's failure to submit a grievance to arbitration. This

constitutes the process that was due to the plaintiff in this setting.

In closing, the complaint in this case simply fails to assert sufficient

allegations to support a First Amendment claim against any of the individual

defendants. Moreover, while Amaechi was dissatisfied with the results of his

Corrective Action Plan, the prediscplinary process, and his ultimate termination, the

second amended complaint makes clear that pre-termination and post-termination

processes were available to Amaechi and that he, in fact, availed himself of these

processes. Although he did not receive the outcome he hoped for, he was afforded

all the process the law requires. Accordingly, we will grant the defendants' motion

to dismiss the complaint.[3]

---

[3] We also note that, even if Amaechi had stated a colorable constitutional claim, the defendants would still be entitled to qualified immunity in this case. Qualified "immunity from liability attaches to government officials except where 1) the plaintiff has alleged facts showing a violation of a constitutional right, *and* 2) at the time of the challenged conduct, the right the defendant violated was clearly established." Rivera v. Monko, No. 20-2531, 2022 WL 2145179, at *3 (3d Cir. June 15, 2022). Further:

> At the "clearly established" step of the qualified immunity analysis, the question is "whether the officer had fair notice that her conduct was unlawful." Courts judge reasonableness against the backdrop of the law at the time of the conduct. "Although there need not be 'a case directly on point for a right to be clearly established, existing precedent must have placed the ... constitutional question beyond debate.' " We first look to factually analogous precedent in the Supreme Court and the Third Circuit Court of Appeals to determine whether that body of law

Finally, we are mindful of the fact that in civil rights cases *pro se* plaintiffs

often should be afforded an opportunity to amend a complaint before the complaint

is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors,

482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not

necessary in a case such as this where amendment would be futile or result in undue

delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). We note, however, that

we have already provided Amaechi ample opportunity to amend his complaint in

light of prior motions to dismiss filed by the defendants. In fact, the operative

pleading in this case is Amaechi's second amended complaint. Thus, in the face of

the defendants' legal objections to the sufficiency of his pleadings Amaechi has

twice endeavored to amend his complaint to state a claim upon which relief may be

granted but to no avail. This pleading still fails to state a claim upon which relief

---

clearly establishes the right at issue in such a way that "a reasonable officer would anticipate liability for this conduct." We then consider whether a "robust consensus" of persuasive authority clearly establishes the right.

Id., at *6 (footnotes omitted). Here, Amaechi has not identified any "robust consensus" of legal authority supporting his claims, nor can he. Therefore, this complaint also fails on qualified immunity grounds, a basis for dismissal that we may consideration *sua sponte* in appropriate cases. Doe v. Delie, 257 F.3d 309, 312 (3d Cir. 2001).

may be granted. On these facts, we find that further amendment would be futile and lead to further, undue delay. Accordingly, we will dismiss this complaint with prejudice.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, the Commonwealth defendants' motion to dismiss (Doc. 41) will be GRANTED, and the second amended complaint will be dismissed as to Williams, Enrico, and Reda.

An appropriate order follows.

Dated: June 17, 2022

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
